BWB:GKS
F. #2015R01255

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>– – – – – – – – – – – – –X<br><br>UNITED STATES OF AMERICA<br><br>- against -<br><br>ASAD NAZIR and<br>TAHIRA NAZIR,<br><br>              Defendants.<br><br>– – – – – – – – – – – – –X | **TO BE FILED UNDER SEAL**<br><br>AFFIDAVIT AND<br>COMPLAINT IN SUPPORT OF<br>APPLICATION FOR ARREST<br>WARRANT<br><br>(18 U.S.C. § 1029(b)(2))<br><br>15-MJ-1113 |

EASTERN DISTRICT OF NEW YORK, SS:

  WILLIAM DUFFIN, being duly sworn, deposes and states that he is an Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, duly appointed according to law and acting as such.

  In or about and between 2012 and 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ASAD NAZIR and TAHIRA NAZIR, together with others, did knowingly and with intent to defraud conspire, use and effect transactions with one or more counterfeit or unauthorized access devices, in a manner affecting interstate commerce, and to obtain or receive payment or any thing of value during any one year period, the aggregated value of which is equal to or greater than $1,000, which conduct affected interstate commerce, all in violation of Title 18 United States Code, Sections 1029(a)(2) and 1029(a)(5).

  (Title 18, United States Code, Section 1029(b)(2))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.  I am an Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"). I am currently assigned to the El Dorado Task Force ("Task Force"), a multi-agency federal and state task force investigating financial crimes. My duties include conducting and assisting in investigations into various financial frauds including money laundering and identity theft. I have participated in numerous investigations involving financial frauds, during the course of which I have interviewed suspects and witnesses, executed court-authorized search and arrest warrants and used other investigative techniques to secure relevant information, including the examination of computers and other electronic devices. As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to carry out their activities. I am familiar with the facts and circumstances set forth below from my participation in the investigation, discussions with other law enforcement officials, my review of documents and my training and experience. Statements attributable to individuals herein are set forth in sum and substance.

2.  During the course of my work as an agent, I have been involved investigations of what are commonly referred to as credit card bust-out schemes and synthetic identity fraud schemes.

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

3. In a credit card bust-out scheme, individuals possessing counterfeit or unauthorized credit cards typically take their credit cards to collusive merchants who make fraudulent charges on these cards. These fraudulent charges include, but are not limited to, charges that purport to be for merchandise or services, but for which no actual merchandise or services are exchanged, and charges for which the collusive merchants and credit card holders know the card issuer will never be paid. Frequently, the credit card holder is paid a fee by the collusive merchant, often a percentage of the value of the fraudulent charges, for the fraudulent use of the credit cards.

4. In a synthetic identity fraud scheme, the perpetrators of the scheme will typically open bank and credit card accounts in the names of one or more other individuals. The putative account holders are not real people. Rather, the perpetrators combine various pieces of personal identifier information (e.g., names, dates of birth, addresses and Social Security numbers) from different individuals, either real or fictitious, to create a fictitious synthetic identity that appears, for all intents and purposes, to represent a real person but, in reality, does not. The perpetrators typically open various types of accounts at different financial institutions for a given synthetic identity using the same synthetically-combined personal identifier information. Possession and use of a stable of synthetic identities frequently permits fraud perpetrators to commit a substantial number of credit card bust-out frauds.

5. As described in further detail below, the defendants ASAD NAZIR's and TAHIR NAZIR's scheme, conducted together with others, involved credit card bust-outs and synthetic identities. In particular, from approximately 2012 through 2015, ASAD NAZIR and

TAHIRA NAZIR served as collusive merchants who accepted over 250 transactions totaling almost $790,000 from dozens of fraudulent credit cards.

6. The defendants ASAD NAZIR and TAHIRA NAZIR jointly own Dupatta Boutique Inc. and Amarillo Inc., two companies that hold themselves out as a fashion boutiques or clothing shops located at 251-18 Hillside Ave., Bellerose, New York 11426. These companies maintain bank accounts on which ASAD NAZIR and/or TAHIRA NAZIR are listed as associates with sole signature authority.

7. From approximately 2012 through 2015, the known bank accounts of Dupatta Boutique Inc. and Amarillo Inc. received approximately $2.2 million in deposits, of which approximately $1.4 million in deposits came from credit card proceeds. As noted above, the companies received almost $790,000 in fraudulent credit card purchases in this time frame. Approximately $1.1 million of the total deposits were withdrawn in cash. The cash withdrawals represent approximately 50% of the total deposits, and almost 80% of the overall credit card proceeds. In my training and experience, this level of cash withdrawals is unusually high for legitimate businesses and is strongly indicative of fraud.

8. Most of the fraudulent credit card transactions at the defendants ASAD NAZIR's and TAHIRA NAZIR's companies were conducted with credit cards belonging to dozens of synthetic identities. Investigators have determined that the names on the cards are synthetic identities by various means in specific instances. For example, in some cases, investigators have attempted to contact the individual to whom a credit card purportedly belongs using the information provided on the credit card application only to learn that the individual does not exist. In other instances, a review of financial records has revealed

evidence of others in the scheme using bank accounts in the names of numerous synthetic identities who, a short time before or after the bank transaction, also make credit card purchases at ASAD NAZIR's and TAHIRA NAZIR's companies. Also, most of the synthetic identities in the scheme possess more than one bank account or credit card account and all of these accounts have been used for fraudulent activity that causes thousands of dollars in losses to various financial companies. Cards belonging to various synthetic identities made credit card purchases at ASAD NAZIR's and TAHIRA NAZIR's companies and the balances were then not paid by the putative card holder, resulting in substantial losses to the credit card issuers. Indeed, as late as mid-July 2015, credit cards in the name of various synthetic identities were used for over $15,000 in purchases at ASAD NAZIR's and TAHIRA NAZIR's companies.

    9. Investigators have determined that, at Dupatta Boutique Inc. alone, fraudulent credit cards were used for over $513,000 in fraudulent credit card purchases from approximately 2012 through 2015. Fraudulent credit cards were used at Amarillo Inc. for over $276,000 in fraudulent credit card purchases in the same time frame. The fraudulent credit card transactions totaled well over $1,000 in each of those years.

    10. Based on my knowledge, training and experience, there is probable cause to believe that the defendants ASAD NAZIR and TAHIR NAZIR knowingly and with intent to defraud conspired with others to commit access device fraud because, over a three year period, their companies conducted over 250 transactions totaling almost $790,000 with fraudulent credit cards in the names of individuals known to be synthetic identities who are not real people and their companies withdrew over 80% of their credit card proceeds in cash from their bank accounts. Furthermore, ASAD NAZIR and/or TAHIRA NAZIR possessed sole signature

authority over the business bank accounts into which the fraudulent credit card proceeds were deposited and from which withdrawals were made. They thus had direct knowledge of their business' finances over time and had control of the business financial records. In my training and experience, the numerical volume, the large amount of fraudulent credit card proceeds, repetitive transactions with synthetic identities are strong evidence of access device fraud. Furthermore, a legitimate business typically withdraws a much smaller fraction of its receipts in cash and would expect that a much smaller fraction of its credit card proceeds to come from fraudulent credit cards.

WHEREFORE, your deponent respectfully requests that the defendants ASAD NAZIR and TAHIRA NAZIR be dealt with according to law.

REQUEST FOR SEALING

It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application for a search warrant. I believe that sealing this document is necessary to preserve the integrity of this ongoing criminal investigation. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and arrest warrants via the Internet, and disseminate them to other criminals as they deem appropriate. Premature disclosure of this

affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

                                                          S/

                                      _____
                                      WILLIAM DUFFIN
                                      Special Agent,
                                      United States Department of Homeland Security,
                                      Homeland Security Investigations

Sworn to before me this
__ day of November, 2015

     S/ James Orenstein
_____
THE HONORABLE JAMES ORENSTEIN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK